871 F.2d 943
 13 Fed.R.Serv.3d 990, 19 Envtl. L. Rep. 21,282
 LAKE HEFNER OPEN SPACE ALLIANCE, an Oklahoma non-profit
corporation, Plaintiff-Appellant,
v.
Elizabeth Hanford DOLE, Secretary of the United States
Department of Transportation, et al.,
Defendants-Appellees.
The City of Oklahoma City, an Oklahoma municipal
corporation; Oklahoma City Municipal Improvement
Authority, a public trust,
Defendants-Intervenors-Appellees.
 No. 87-1381.
 United States Court of Appeals,
Tenth Circuit.
 March 28, 1989.
 
 William W. Gorden, Jr., Oklahoma City, Okl., for plaintiff-appellant.
 Jean C. Rogers, Regional Counsel, Federal Highway Admin., Oklahoma City, Okl. (William S. Price, U.S. Atty., William Lee Borden, Jr., Asst. U.S. Atty., Oklahoma City, Okl., with her on the brief), for Federal defendants-appellees;
 Floyd W. Taylor of Miskovsky, Sullivan, Taylor & Manchester, Oklahoma City, Okl., for State defendant-appellee.
 Daniel T. Brummit, Oklahoma City, Okl., for Oklahoma City, defendant-intervenor-appellee.
 Craig B. Keith, Oklahoma City, Okl., for Oklahoma Mun. Improvement Authority, defendant-intervenor-appellee, on the brief.
 Before BALDOCK, EBEL and McWILLIAMS, Circuit Judges.
 McWILLIAMS, Circuit Judge.
 
 
 1
 Lake Hefner Open Space Alliance, an Oklahoma non-profit corporation formed for the purpose of preserving open space and controlling use, improvement, and development of the land surrounding Lake Hefner in Oklahoma City, Oklahoma, brought suit in the United States District Court for the Western District of Oklahoma against Elizabeth Hanford Dole, then the Secretary of Transportation, Ray A. Barnhart, the Administrator of the Federal Highway Administration, and V.O. Bradley, Director of the Oklahoma Department of Transportation. The City of Oklahoma City and the Oklahoma Improvement Authority subsequently intervened as state defendants. Lake Hefner prayed for judicial review of an administrative decision of the Federal Highway Administration (FHWA) approving a final environmental impact statement (FEIS) for a federally funded highway project which would build a six-lane urban freeway from the Northwest 63rd Street in Oklahoma City to N.W. 136th Street in Oklahoma City. The freeway would then become a four-lane divided urban arterial road to N.W. 178th Street in Oklahoma City.
 
 
 2
 The decision which Lake Hefner complained of was made pursuant to the National Environmental Policy Act, 42 U.S.C. Sec. 4321-4347, and the Transportation Act of 1966, as amended, Section 4(f), 49 U.S.C. Sec. 1653(f), recodified at 49 U.S.C. Sec. 303. The relief sought was an order reversing the decision of the FHWA approving the FEIS and allowing the highway project to proceed, and for a further order requiring the several defendants to "properly review the Alternatives to the route chosen for this project, and ... find that route which [is] prudent and feasible for this project, not by comparison of Alternatives, but by specific findings as to each possibility...."
 
 
 3
 After the federal and state defendants had filed separate answers, a joint motion for summary judgment was filed by all defendants. The motion was based on the administrative record, evidentiary matters, and supporting affidavits. Although Lake Hefner filed no evidentiary matter or affidavits in response to the defendants' motion for summary judgment, it did file a brief in opposition to the motion.
 
 
 4
 After a hearing, the district court granted the defendants' motion for summary judgment and entered judgment for the defendants. Lake Hefner appeals. We affirm.
 
 I. The "Burden" on Summary Judgment
 
 5
 Rule 56, of the Federal Rules of Civil Procedure, provides that a claimant or a defending party may move, with or without supporting affidavits, for summary judgment and that "judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a-c). Rule 56(e) further provides that when a motion for summary judgment is made and "supported as provided in this rule, an adverse party may not rest upon mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."
 
 
 6
 As above indicated, the defendants' motion for summary judgment was supported by the administrative record, several affidavits and other evidentiary matter. Plaintiff resisted the motion with a brief, but no affidavits or evidentiary matter. Therefore, the defendants in urging summary judgment were relying on the administrative record supported by affidavits, and Lake Hefner, in resisting the motion for summary judgment, was relying on that same administrative record, or its interpretation of that record.
 
 
 7
 The district court correctly stated, in the penultimate paragraph of its order granting summary judgment, that summary judgment was only proper where there is no genuine issue of material fact and the mover is entitled to judgment as a matter of law. Lake Hefner argues that in preceding portions of the district court order, however, the court incorrectly indicated that Lake Hefner had some sort of "burden of proof." Specifically, Lake Hefner notes that in his order the district judge spoke as follows: "The burden of proof is on the challenging plaintiffs to establish that the EIS [environmental impact statement] was inadequate or the Secretary of Transportation acted improperly in opposing use of park lands," and the district judge further stated that Lake Hefner's "arguments have not demonstrated that the FHWA [Federal Highway Administration] erred on these issues; to that extent Plaintiff has failed to carry its burden of proof."
 
 
 8
 We are concerned about these references made by the district judge to Lake Hefner's "burden of proof." When a defendant files a motion for summary judgment, he has to show that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); Brown v. Parker-Hannifin Corporation, 746 F.2d 1407, 1411 (10th Cir.1984). The opposing party, Lake Hefner in this case, has no "burden of proof," as such; however, in resisting the motion for summary judgment, Lake Hefner may not rely on mere allegations, or denials, contained in its pleadings or briefs. Bryant v. O'Connor, 848 F.2d 1064, 1067 (10th Cir.1988) (quoting Contemporary Mission, Inc., v. United States Postal Service, 648 F.2d 97, 107 (2d Cir.1981)); Burnette v. Dresser Industries, 849 F.2d 1277, 1284 (10th Cir.1988). Rather, Lake Hefner must set forth specific facts showing the presence of a genuine issue of material fact for trial and significant probative evidence supporting the allegations. Burnette, 849 F.2d at 1284 (citing Anderson, 477 U.S. at 248-49, 106 S.Ct. at 2510).
 
 
 9
 If Lake Hefner had filed a motion for summary judgment, it would have had to show that there was no genuine issue of material fact and that it was entitled to judgment as a matter of law. And, of course, if this case had gone to trial, Lake Hefner would have the plaintiff's usual "burden of proof." But in resisting defendants' motion for summary judgment, Lake Hefner only has a "burden," if that be the appropriate word, to identify specific facts posing genuine issues of material fact. See generally Bryant, 848 F.2d at 1067-68; Burnette, 849 F.2d at 1284.
 
 
 10
 However, under all the circumstances, we do not find that the district court's reference to Lake Hefner's "burden of proof" necessitates reversal. One of these "circumstances" is Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).
 
 
 11
 In Celotex, decedent's administratrix brought a wrongful death action against Celetex claiming that her husband's death resulted from exposure to asbestos products manufactured by Celetex. A motion for summary judgment was filed by Celetex asserting that during discovery the administratrix failed to produce any evidence to support her allegation that the decedent had been exposed to Celetex products. The administratrix, in response to Celetex's motion, produced documents tending to show such exposure, but Celetex argued that such documents were inadmissible hearsay and should not be considered in opposition to Celetex's motion. The district court granted summary judgment, but the Court of Appeals for the District of Columbia reversed. On certiorari, the Supreme Court reversed, and in so doing, commented as follows:
 
 
 12
 In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof. "[T]h[e] standard [for granting summary judgment] mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a)...."
 
 
 13
 Id. at 322-23, 106 S.Ct. at 2553 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. at 250, 106 S.Ct. at 2511).
 
 
 14
 In its complaint, Lake Hefner sought judicial review, and reversal, of an administrative decision, which necessarily involved a review of the record upon which that decision was based. In response to defendants' motion for summary judgment, Lake Hefner did not "by affidavits or as otherwise ... set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Rather, Lake Hefner was apparently content to have the district court rule on the defendants' motion for summary judgment based only on a review of the administrative record before the court, and on the several affidavits submitted by the defendants. Thus, in such setting, the district court's references in its order to Lake Hefner's "burden of proof" are not fatal, particularly in view of its penultimate paragraph wherein the district court clearly indicated that summary judgment was only proper where there is no genuine issue of material fact and the "moving party" is entitled to judgment as a matter of law. Accordingly, we proceed to dispose of this appeal on the merits of the issues raised by Lake Hefner as grounds for reversal.
 
 II. Feasible and Prudent
 
 15
 The FEIS considered eight Alternative Plans for the project, several of which involved the use of park land. Alternative I, the particular plan recommended in the statement and ultimately approved by the FHWA, involved using a part of Lake Hefner Park. On appeal, Lake Hefner asserts that the defendants in approving Alternative I failed to comply with 23 U.S.C. Sec. 138. That statute provides as follows:
 
 Sec. 138. Preservation of parklands
 
 16
 It is hereby declared to be the national policy that special effort should be made to preserve the natural beauty of the countryside and public park and recreation lands, wildlife and waterfowl refuges, and historic sites. The Secretary of Transportation shall cooperate and consult with the Secretaries of the Interior, Housing and Urban Development, and Agriculture, and with the States in developing transportation plans and programs that include measures to maintain or enhance the natural beauty of the lands traversed. After the effective date of the Federal-Aid Highway Act of 1968, the Secretary shall not approve any program or project (other than any project for a park road or parkway under section 204 of this title) which requires the use of any publicly owned land from a public park, recreation area, or wildlife and waterfowl refuge of national, State, or local significance as determined by the Federal, State, or local officials having jurisdiction thereof, or any land from an historic site of national, State, or local significance as so determined by such officials unless (1) there is no feasible and prudent alternative to the use of such land, and (2) such program includes all possible planning to minimize harm to such park, recreational area, wildlife and waterfowl refuge, or historic site resulting from such use.
 
 
 17
 Id. (emphasis added).
 
 
 18
 Lake Hefner's argument is that the words "feasible" and "prudent," as used in the statute, are "absolutes" and do not permit "comparisons" of the various alternatives. According to Lake Hefner, comparison of alternatives is at the heart of an FEIS which does not involve park land, but Sec. 138 precludes comparisons of alternatives where park land is involved. In this vein, Lake Hefner argues that five of the eight alternatives in the FEIS were rejected on the "improper" basis of comparison, and only three alternatives were considered using the "proper" Sec. 138 feasible and prudent test. We are not persuaded.
 
 
 19
 Both the FEIS and the record of the decision of the Highway Administration use the word "prudent" and "feasible" repeatedly in evaluating the eight alternatives. The FHWA in its record of decision found Alternative I to be the only feasible and prudent alternative, and determined that the other alternatives were not feasible and prudent.
 
 
 20
 Further, we believe our holding in this regard is in accord with the rationale of Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971), a case relied on here by both parties. In Volpe, the Supreme Court, addressing 23 U.S.C. Sec. 138 and the "feasible and prudent" standard, stated that "the Secretary cannot approve the destruction of park land unless he finds that the alternative routes present unique problems." Id. at 413, 91 S.Ct. at 822. Our study of the record convinces us that the alternatives to the plan approved did present "unique problems." Therefore, we believe that the district court did not err in holding that the Secretary followed the statute.
 
 III. Freezing of Public Comment
 
 21
 Regulations promulgated pursuant to the National Environmental Policy Act provide that after a draft environmental impact statement is prepared the agency shall request comments from the public. 40 C.F.R. Sec. 1503.4 (1987). A similar regulation promulgated pursuant to the Transportation Act provides for "effective public participation in consideration of highway location and design...." 23 C.F.R. Sec. 790.1-790.11 (1987). Lake Hefner argues that the draft environmental impact statement and the notice given concerning a public hearing referred to only six of the eight alternatives ultimately considered in the FEIS, and that such omissions "froze" public comment. We find no error in that regard.
 
 
 22
 Lake Hefner concedes that it is not incumbent on the agency to hold a public hearing, but contends that once the agency determines to hold a public hearing such must "be enlightening instead of misleading." We hold that here the agency substantially complied with the regulations. One purpose of a public hearing is to develop new alternatives that may have been previously overlooked. 23 C.F.R. Sec. 790.3 (1988). The fact that the draft environmental impact statement made no mention of mass transit or improved existing facilities, both of which were listed as alternatives in the final environmental impact statement, is not fatal.
 
 IV. "No Build" Alternative
 
 23
 Alternative VIII in the final environmental impact statement was referred to as the "no build" or "do nothing" alternative. As indicated, in the FEIS and in the decision of the FHWA, Alternative I was deemed to be "the only feasible and prudent alternative," that is, all of the other seven, including "no build," were not "feasible and prudent." In this case the "no build" alternative was rejected because the existing streets would not be able to accommodate future traffic volumes. Other courts have found this reason adequate justification for eliminating a "no build" alternative from consideration.[1] We have examined closely the exceedingly detailed FEIS and, in our view, the decision of the FHWA based thereon was neither arbitrary, capricious, nor an abuse of discretion, and was in accordance with the law. Accordingly, the district court acted properly in granting defendants' summary judgment.
 
 
 24
 Judgment affirmed.
 
 
 
 [1]
 See Druid Hills Civic Ass'n v. Federal Highway Admin., 772 F.2d 700, 715 (11th Cir.1985); Maryland Wildlife Federation v. Dole, 747 F.2d 229, 242 (4th Cir.1984); Arizona Past & Future Foundation v. Lewis, 722 F.2d 1423, 1429 (9th Cir.1983); Coalition on Sensible Transp., Inc, v. Dole, 642 F.Supp. 573, 598 (D.D.C.1986), aff'd, 826 F.2d 60 (D.C.Cir.1987). Compare with Stop H-3 Association v. Dole, 740 F.2d 1442 (9th Cir.1984), cert. denied, sub nom Yamasaki v. Stop H-3 Association, 471 U.S. 1108, 105 S.Ct. 2344, 85 L.Ed.2d 859 (1985) (case remanded for more information when "no build" alternative rejected but existing highways with unused capacity during peak traffic hours)