**Debra K. ANDERSON, Plaintiff,**

v.

**William R. EBY, Cheri Eby, Jane Doe, whose true name is unknown, Wilderness Adventures, Ltd. doing business as Mountain Meadow Tours, Ltd., doing business as Lost Lake Lodge and Resort, Ltd. doing business as Rendezvous Outfitters and Guides, Ltd., Defendants.**

No. 90–K–1884.

United States District Court,
D. Colorado.

Feb. 27, 1995.

Jim Leventhal, Natalie Brown, Leventhal & Bogue, P.C., Denver, CO, for plaintiff.

Christina M. Habas, Watson Nathan & Bremer, P.C., Denver, CO, for defendants.

## MEMORANDUM OPINION AND ORDER

KANE, Senior District Judge.

Before me are cross-motions for summary judgment on Plaintiff Debra Anderson's personal injury claims. For the reasons set forth below, I grant Defendants' motion for summary judgment and deny Plaintiff's as moot.

### I. *Background*

In December 1989, Defendant Wilderness Venture, Ltd. obtained a Special Use Permit from the Forest Service, United States Department of Agriculture, to conduct snowmobile tours on federal land. Plaintiff Debra K. Anderson was seriously injured when her snowmobile crashed during one such tour in February 1990. Anderson filed suit against Wilderness Venture and three individual organizers of the tour, claiming they were negligent in traveling at excessive speeds and allowing her to become separated from the main group.

Before embarking on the ill-fated tour, Anderson signed a release. Defendants moved for summary judgment, claiming the release absolved them of any liability for their alleged negligence. Judge Arraj of this court agreed, finding the release unambiguous and enforceable under Colorado law, and rejecting Anderson's contention that the release was contrary both to federal policy and the express terms of the Special Use Permit ("Permit"). Anderson appealed.

The Tenth Circuit affirmed the district court's conclusion that the release was enforceable and agreed the regulations governing Forest Service special use permits expressed no firm federal policy against its use. *See Anderson v. Eby,* 998 F.2d 858, 862–63 (10th Cir.1993). It reversed the entry of summary judgment in favor of Defendants, however, characterizing the permit as a "contract with the federal government" whose terms were ambiguous as to the parties' intent regarding the ability of Defendants to obtain waivers of liability for their own negligence such as the one signed by Anderson. *Id.* at 864–65. Were Anderson able to prove Defendants were contractually bound not to seek such waivers from those it guided on public lands, the Tenth Circuit reasoned Anderson could be considered a third-party beneficiary of that contract entitled to enforce its terms and void the release. *Id.*

The relevant portion of the Special Use Permit states:

> The permittee shall be solely liable for any and all accidents, injuries, and other costs incurred as a result of exercising the privileges under this permit.... The permittee is responsible for the health and safety of clients he guides on the National Forest.

Pl.'s Br. Supp. Mot. Summ. J, Ex. 2. According to the court of appeals, this language is ambiguous and could be read as: (1) "merely reiterating the protection of the national fisc [addressed in other sections of the permit regarding indemnification of the United States]"; (2) "requiring Defendants to act as insurers for their clients"; or (3) "merely forbidding Defendants from contracting away their own negligence." 998 F.2d at 865. It concluded this ambiguity, standing alone, presented a disputed issue of material fact as

to whether the government and Defendants intended to benefit non-parties like Anderson, and precluded entry of summary judgment in Defendants' favor. *Id.* at 865–66.

The Tenth Circuit did not foreclose the possibility that Defendants could prevail on summary judgment, however, but only if they could demonstrate the absence of a genuine issue of material fact relating to the parties' agreement on waivers. *Id.* at 866. Because Colorado law permits a court determining whether a contract is ambiguous to consider extrinsic evidence bearing upon the meaning of the written terms, the court concluded Defendants were "at liberty to renew their motion for summary judgment with the support of extrinsic evidence which shows that, when read in context with the surrounding circumstances, the Permit unambiguously does not void the waiver at issue in this case." *Id.*

Both Defendants and Anderson claim entitlement to summary judgment under the standard set forth by the Tenth Circuit. Defendants contend the parties' conduct, as well as other extrinsic evidence of the usage and meaning of the language at issue, establishes as a matter of law that (1) there was no agreement between the parties prohibiting Defendants from seeking an otherwise valid waiver of liability for their own negligence, and (2) the Permit does not void the waiver Anderson signed. Anderson counters the circumstances surrounding the making of the Permit show it allowed Defendants to contract away only their liability for injuries stemming from the inherent risks of the sport, not their own negligence.

The sole question for review is whether either side has presented sufficient extrinsic evidence to resolve the ambiguity in the Permit language.[1] Defendants point to the parties' conduct both before and after the Permit was issued, as well as the testimony of Forest Service recreation staff officer Stanley E. Allgeier, to show neither they nor the Forest Service intended the Permit to prohibit liability waivers that were otherwise valid under Colorado law. Anderson contends Allgeier's testimony supports the opposite conclusion, and points generally to the Forest Service Special Uses Management Manual (the "Manual") and other provisions in the Permit as evidence "clearly demonstrat[ing] the waiver as written substantially exceeds the scope of any waivers contemplated by the Forest Service." Pl.'s Br. Supp. Mot. Summ. J. at 4. Having considered this evidence, I find that as a matter of law, the Permit is susceptible only to the reading advanced by Defendants.

## II. *Merits*

■ It is undisputed Defendants had the right under Colorado law to secure an exculpatory agreement from Anderson releasing them from claims of negligence. *Anderson v. Eby,* 998 F.2d at 862–63 (citations omitted). The question is whether Defendants contracted away this right when they obtained the Special Use Permit allowing them to conduct snowmobile tours on federal land. Both the Defendants and the Forest Service deny any such intent and I find Anderson has presented insufficient evidence from which to infer it.

Defendants contend their open use of a Release and Indemnity Agreement after obtaining the Permit and the fact the Forest Service took no steps to prohibit or limit such use is "a reliable test of [the parties'] interpretation of the instrument." Defs.' Br. Resp. Pl.'s Mot. Summ. J & Br. Suppt. Defs' Cross Mot. Summ. J. at 11 (quoting *Hinkle v. Blinn,* 92 Colo. 302, 19 P.2d 1038 (1933) and *Tucker v. Ellbogen,* 793 P.2d 592 (Colo.1990 [1989])). Stanley Allgeier testified he has been with the Forest Service since 1965 and stated the Forest Service has never had a policy preventing permittees from using lia-

---

1. Defendants vigorously dispute the Permit is a contract and argue the Tenth Circuit did not rule on the question because the parties had not raised it below. Defs.' Br. in Resp. Pl.'s Mot. Summ. J. & Support Defs.' Cross Mot. Summ. J. at 5–7; Defs.' Reply at 1–2. While I agree with the Defendants and Judge Brorby in dissent that the Permit is a permissive license enforceable only through administrative revocation proceedings and not a contract enforceable at law, the Tenth Circuit's opinion is dispositive on both issues. *See* 998 F.2d at 863–64 (finding third-party beneficiary claim "adequately raised" both in the district court and on appeal, and quoting Colorado law providing there can be no such claim absent an express contract).

bility waivers. Allgeier Dep. at 11–13. Allgeier also testified that when he was functioning as an assistant director of recreation activities and working with special use permits, he drafted a statement for inclusion in the Forest Service handbook "almost exactly like" the "solely liable" Permit language at issue here. *Id.* at 27:15–20. Allgeier stated the Forest Service's intent in including that language was to "enhance the government's defense in lawsuits relating to the discretionary function of the Federal Tort Claims Act," and not to have any effect on the use or nonuse of waivers. *Id.* at 27:18–28:21.

■ While Defendants as movants bear the burden of demonstrating the lack of genuine issues for trial, Anderson cannot rest upon mere allegations or denials to defeat their motion for summary judgment. Fed. R.Civ.P. 56(e); *e.g., Lake Hefner Open space Alliance v. Dole,* 871 F.2d 943, 945 (10th Cir.1989). She "must set forth specific facts showing that there is a genuine issue for trial." Anderson attempts to create such an issue by citing a series of questions put to Mr. Allgeier at his deposition culminating in testimony indicating the Forest Service did not contemplate waivers being used that sought to release operators from liability for negligence because such waivers "were not allowed by law." Allgeier Dep. at 48:5–22.

As an initial matter, Mr. Allgeier is not a lawyer and his testimony as to what would or would not be allowed by law is of questionable relevance. Moreover, it is clear from a complete reading of Mr. Allgeier's testimony that he was referring to his understanding of the Colorado Supreme Court case of *Jones v. Dressel,* 623 P.2d 370 (1981), which he accurately characterized as prohibiting the use of releases to shield a party against a claim for willful and wanton negligence. Allgeier Dep. at 48:5–9. I find the only relevance of Allgeier's testimony to this case (which does not involve any claim for willful or wanton negligence) is in his understanding that the Forest Service intended to embrace, not alter, Colorado's existing tort liability scheme.

Anderson also argues the Forest Service Manual raises triable issues with respect to the parties' intent regarding liability waivers. She contends the Manual "sheds light on the intent of the parties" because it requires permittees to operate tours in a safe manner and states "if safe operation, safe equipment, and good supervision are provided by concession permittees, it is reasonable to expect participants, personally, to assume risks from accidents not related to [the] provision and operation of safe equipment in safe condition." Pl.'s Br. Supp. Mot. Summ. J. at 4–5 (quoting Manual § 2713.32, attached as Ex. 3 to Plaintiff's brief). Anderson asserts § 2713.32 evinces an intent on the part of the government to prohibit permittees from contracting away liability for anything other than injuries resulting from the inherent risks of an activity, and argues "any release which [sic] releases the operator from negligence is clearly contrary to the provisions of § 2713.32." *Id.* at 5.

I find this to be simply a rehashing of Anderson's argument on appeal that the release she signed is contrary to federal policy. The Tenth Circuit rejected this argument, concluding neither the Permit nor the regulations implementing the special use program expressed a "firm federal policy" against liability waivers. *Anderson v. Eby,* 998 F.2d at 863. No such policy emerges from the § 2713.32 of the Manual, either. The fact the government "expects" users to assume the inherent risks of recreational activities on federal land when permittees operate concessions in reasonably safe manner is not "evidence" of a federal policy prohibiting users from voluntarily assuming greater risks when permittees do not. It most certainly is not "evidence" the Forest Service intended the Permit in this case to void an otherwise valid release Anderson willingly signed.

### III. *Conclusion*

I find Defendants have adduced sufficient evidence to resolve the perceived ambiguity in the Special Use Permit and conclude Plaintiff has failed to refute that evidence sufficiently to prevent entry of summary judgment against her under Fed.R.Civ.P. 56(e). For the foregoing reasons, I GRANT Defendants' Cross Motion for Summary Judgment and DENY Plaintiff's Motion for Summary Judgment as moot.